ELECTRONICALLY FILED - 2023 Mar 28 3:48 PM - BEAUFORT - COMMON PLEAS - CASE#2023CP0700583

| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |
|---|---|
| COUNTY OF BEAUFORT | FOURTEENTH JUDICIAL CIRCUIT |

Rebecca A. Landon,

                Plaintiff(s),

-vs-                               Case No.

Vaden of Beaufort, Inc., and Samantha Nottingham a/k/a Samantha Jordan a/k/a Samantha Matos,

                Defendant(s).

**SUMMONS**

TO:    THE DEFENDANT(S) ABOVE NAMED:

YOU ARE HEREBY SUMMONED and required to answer the Complaint in this action, a copy of which is hereby served upon you and to serve a copy of your Answer to the said Complaint on the subscriber, David A. Maxfield, Esquire, at his office at P.O. Box 11865, Columbia, South Carolina 29211, within thirty (30) days after service hereof, exclusive of the date of such service; and if you fail to answer the Complaint within the time aforesaid, the Plaintiff in this action will apply to the court for the relief demanded in the Complaint. If you fail to appear and defend, judgment by default will be rendered against you for the relief demanded in the Complaint.

                                      DAVE MAXFIELD, ATTORNEY, LLC

                                      s/ David A. Maxfield_____
                                      Dave Maxfield, Esq., SC Bar No. 7163
                                      P.O. Box 11865
                                      Columbia, SC 29211
                                      (803) 509-6800
                                      (855) 299-1656 (fax)
                                      dave@consumerlawsc.com

March 28, 2023



ELECTRONICALLY FILED - 2023 Mar 28 3:48 PM - BEAUFORT - COMMON PLEAS - CASE#2023CP0700583

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |
| COUNTY OF BEAUFORT | FOURTEENTH JUDICIAL CIRCUIT |

Rebecca A. Landon,

                Plaintiff,

-vs-

Vaden of Beaufort, Inc., and Samantha Nottingham a/k/a Samantha Jordan a/k/a Samantha Matos,

                Defendants.

**COMPLAINT**

(Jury Trial Requested)

Plaintiff, complaining of the Defendants above named, would respectfully show:

### JURISDICTION

1. Plaintiff is a citizen and resident of South Carolina.

2. Defendant Vaden of Beaufort, Inc., ("Dealer") is a corporation organized under the laws of the State of Georgia, which owns real property and transacts business as a car dealership in Beaufort County, South Carolina.

3. Defendant Samantha Nottingham ("Nottingham") is or was a citizen and resident of the County of Beaufort, State of South Carolina, now or formerly incarcerated in the Beaufort County detention center.

4. This Court has jurisdiction over the parties and subject matter of this action and venue is proper.

1

## INTRODUCTION

5. Identity theft impacts nearly 17 million Americans a year and can have ruinous consequences for victim's credit, financial safety, and emotional well-being.

6. This danger can be avoided if businesses that are frequently targeted by Identity Thieves take simple steps to verify identity and prevent victimization of innocent members of the public.

7. Among different types of businesses, Car Dealers are a favorite target of Identity Thieves.

8. The Federal Trade Commission (FTC) has repeatedly warned Dealers of their role and responsibility in preventing identity theft and promulgated "Red Flags" rules specific to Dealers.

9. Among other things, the "Red Flags" Rule requires that Dealers who arrange financing or credit **must affirmatively verify customer identity**.

10. As the FTC instructs (and the Dealer in this case itself acknowledges) requiring a customer to:

    a. produce a physical identification card; and,

    b. verify that the physical description on the ID matches the person standing before them.

11. If these rules (which take less than a minute) are followed by Dealers, most identity theft can be prevented, and the public kept safe from financial harm.

12. However, if these rules are ignored (or worse, if a Dealer participates via lax enforcement or **affirmative falsification of documents**) an Identity Thief can wreak massive harm on an individual's life in the span of a few hours.

## FACTUAL ALLEGATIONS

13. From 2012 to 2020, Plaintiff Rebecca Landon lived in Beaufort and worked for the United States Marine Corps.

ELECTRONICALLY FILED - 2023 Mar 28 3:48 PM - BEAUFORT - COMMON PLEAS - CASE#2023CP0700583

ELECTRONICALLY FILED - 2023 Mar 28 3:48 PM - BEAUFORT - COMMON PLEAS - CASE#2023CP0700583

14. Plaintiff lived modestly, used her credit carefully, and valued her privacy and her time.

15. Defendant Dealer operates a large car dealership in Beaufort and enjoys the privilege of a South Carolina motor vehicle dealer's license, allowing it to sell new and used vehicles to members of the public.

16. Defendant Dealer maintains a website on which it claims as its guiding principles the three principles of **"Trust, Honesty and Truth."**

17. Commensurate with those principles, as a Dealer who arranges credit, Defendant must tell the truth and be honest not only to the public, but to the financial institutions it submits credit obligations.

18. Defendant Dealer is aware of the problem of Identity Theft.

19. According to COMPLI, a dealer compliance service, "identity theft is widespread" in the car business, with 70-75% of all car thefts being accomplished by identity theft in 2003.

20. In 2003, Congress amended the FCRA by passing the Fair and Accurate Credit Transactions Act (FACTA) which was intended to combat Identity Theft and the severe financial, personal, and emotional damages it causes.

21. Because of the passage of FACTA and its associated rulemaking, for the last 13 years Defendant Dealer has been legally required to take affirmative and concrete steps to identify, prevent and mitigate Identity Theft under the FTC's "Red Flags" rule.

22. The Red Flags rule mandates that Dealer:

    a. **Identify "Red Flags"** that indicate the possible existence of identity theft at checkpoints during the deal, such as consumer credit reports that include fraud alerts.

    b. **Detect identity theft** by actively looking for presence of red flags, including by actively checking customer identities.

    c. **Prevent identity theft** by refusing to initiate new accounts where uncleared red flags are present; and,

3

ELECTRONICALLY FILED - 2023 Mar 28 3:48 PM - BEAUFORT - COMMON PLEAS - CASE#2023CP0700583

    d. **Mitigate identity theft** by requesting closure of accounts, notifying law enforcement, and by assisting victims when Identity Theft is discovered.

23. Defendant Dealer also must create a written Identity Theft Prevention Program (ITPP) for discharging the above duties, which must be approved by the Dealer's highest governing authority and overseen by a senior officer of the Dealer to ensure compliance, reporting, and training.

24. Besides these rules enforced by the FTC that require Dealer do its part to prevent the spread of Identity Theft, it is axiomatic that Dealer <u>must never affirmatively enable Identity Theft by making knowingly false statements or submitting false documents.</u>

25. Dealer must never tell a financial institution or credit reporting agency it has verified the identity of a customer when it has not, particularly "under oath."

26. Defendant must never, under any circumstances, profit from Identity Theft or keep any money earned from a fraudulent transaction.

## <u>Dealer's Pattern & Practice of False Notarization</u>

27. In or around 2019 Dealer hired an individual identified as "Receptionist L" to work at its dealership.

28. Defendant Dealer gave "Receptionist L" no meaningful training in Identity Theft, despite being required under federal law to do so.

29. Before November 2, 2020, "Receptionist L" had never been a Notary.

30. Dealer instructed "Receptionist L" to apply to be a Notary, paid the fees for the Receptionist L's Notary application, and procured a Notary Seal in her name.

31. From November 2, 2020 onward, Dealer's managers directed "Receptionist L" to notarize documents in deal files in blank, i.e., stating under oath she had witnessed the signature of customers who she never saw.

32. Every such instance violated S.C. Code 26-1-90(D)(1), which prohibits notarization of a blank or incomplete document, and was a criminal act.

4

ELECTRONICALLY FILED - 2023 Mar 28 3:48 PM - BEAUFORT - COMMON PLEAS - CASE#2023CP0700583

33. Among the documents Dealer directed "Receptionist L" were "One and The Same" affidavits of identity that Dealer sent to financial institutions, and Limited Powers of Attorney, which Dealer used in transacting business with the State of South Carolina.

34. Upon information and belief, "Receptionist L" notarized documents in the above unlawful manner on 25 – 100 deal files, if not more, all at the direction of Dealer's management.

35. The falsely notarized documents were sent electronically or by U.S. Mail to the South Carolina DMV, and multiple financial institutions.

36. Defendant's intentionally fraudulent conduct led to the funding of one or more of the fraudulent deals that Dealer completed with the fraudster pretending to be Landon.

### The Fraudster – "Samantha Nottingham"

37. Defendant Samantha Nottingham ("Nottingham") is a woman who, according to her March 8, 2021, arrest record, is 5'8" and 161 pounds.

38. Currently, Ms. Nottingham awaits trial on 13 fraud-related charges.

39. Nottingham arrived in the Beaufort area in or around 2020, representing herself as the owner of a real estate development and ranching company called "The Eastern Westerner, LLC."

40. Nottingham hired numerous persons to work for her business, including Plaintiff and several military veterans.

41. As part of her later discovered fraudulent activities, Nottingham used The Eastern Westerner, LLC to steal funds from members of the public, potential investors, and ultimately her own employees. Besides soliciting investments and "temporary" loans, Nottingham fraudulently used employee personal credit cards, and personal identifying information to commit identity theft, such as that accomplished with the assistance of Dealer.

5

ELECTRONICALLY FILED - 2023 Mar 28 3:48 PM - BEAUFORT - COMMON PLEAS - CASE#2023CP0700583

## **Dealer helps Nottingham finance $176,064 of vehicles in Plaintiff's name with No ID and No Money Down.**

42. On or about December 30, 2020, Nottingham communicated with Dealer through Dealer's website, pretending to be her employee, Landon.

43. Nottingham submitted a credit application using information taken from Landon's employee personnel file.

44. The following day, Nottingham went to Defendant Dealership, presenting herself as "Rebecca Landon," and stated that she was the owner of The Eastern Westerner.

45. Nottingham asked about purchasing two vehicles – 2020 GMC Suburban 1GNSKFKD4MR137909 listed at $80,526, and a 2020 GMC Silverado listed at $79,310 1GC4YREY5MF156860.

46. Nottingham told Dealer she wanted to finance the entire purchase price of both vehicles **with no money dow**n.

47. Nottingham did not try to negotiate and agreed immediately to pay full asking price for both vehicles.

48. In the Finance & Insurance office Dealer (while not requesting identification) "upsold" both deals with add-on products which added nearly $15,000 to the price of the vehicles.

49. The total price of both vehicles, with add-ons, was **$176,064.**

50. **Numerous red flags were present in the deals, including**:

    a. **Nottingham possessed no physical driver's license**, but simply a paper copy of Landon's driver's license from her personnel file.

    b. **Nottingham's physical description on the paper ID did not match Landon's**. Landon is 5'2" and weighs 115 lbs., while Nottingham, according to her March 2021 mugshot, is 5'8" and 161 lbs. (creating the conundrum of the 5'2" "customer" towering over her 5'6" salesman).

6

ELECTRONICALLY FILED - 2023 Mar 28 3:48 PM - BEAUFORT - COMMON PLEAS - CASE#2023CP0700583

    c. When Dealer pulled or caused to be pulled Plaintiff's credit reports (which it did multiple times) they contained a **"security alert"** indicating she may be a past fraud victim.

    d. The addresses on the credit applications did not match that on Landon's photocopied driver's license; or,

    e. The Eastern Westerner was listed as a corporation formed in South Carolina (rather than Texas); or,

    f. The Eastern Westerner was listed as having been in business for "1 year" but Landon had somehow been employed as its "Executive" for "2 years," or,

    g. The Eastern Westerner's website and all publicly available information listed Nottingham (not Landon) as the owner / executive (and showed Nottingham's picture); or,

    h. The Eastern Westerner listed no bank account and provided no financial statement; or,

    i. The Eastern Westerner listed no state of incorporation, or,

    j. Nottingham's "Rebecca Landon" signature bore no resemblance to the signature on Landon's driver's license; and,

    k. The individual Landon credit application contained no prior address, no prior employer, no email address, no driver's license number, license state, and no prior occupation.

51. Despite the foregoing, Dealer knew that if it could finance the two vehicles, Dealer would make significant money not only from the sale of the vehicles and commissions from the add-on products, but from the financing itself in a yield-spread.

52. Looking away from the warning flags, Dealer sent the deal files to "Receptionist L" for notarization.

ELECTRONICALLY FILED - 2023 Mar 28 3:48 PM - BEAUFORT - COMMON PLEAS - CASE#2023CP0700583

53. **Even though Receptionist L witnessed none of the transaction or signatures, based on her employer's instructions and in violation of the criminal laws of South Carolina, she notarized the signature.**

54. Dealer then sent, electronically and through the mail, falsified documents (including falsely notarized documents) to financial institutions.

55. As a direct and proximate result, financial institutions including Ally Bank were led to believe that Dealer had verified the customer's identity when it had not.

56. Dealer ultimately obtained obtaining approvals from GM Financial for the Suburban, and from Ally for the Silverado, with The Eastern Westerner, LLC, and Landon as co-buyers.

57. Nottingham took delivery of the vehicles (one of which, in particularly cruel and inventive twist, Nottingham presented to her employee Landon as a "company owned vehicle" that she could use and purchase over time under a payment plan).

### Nottingham returns to Dealer for a Third $82,000 vehicle.

58. Having obtained from Dealer more than $175,000 in vehicles with no ID, no money down, and no questions asked, Nottingham began work on a third deal with Dealer for a second Silverado (1GC1YREY7MF160749) almost immediately.

59. On January 5, 2021, Dealer pulled Landon's Experian, Trans Union and Equifax credit files without her knowledge or consent for the new transaction.

60. To find financing, Dealer shopped the deal to TD Auto Finance, Bank of America, BBVA, and other lenders (all of whom pulled Landon's file themselves), before finally securing financing through First Citizens Bank.

61. Again, Dealer saw or would have seen the security alert on Landon's credit file.'

62. On January 26, 2021, Nottingham returned to Dealer to take delivery of the second Silverado.

63. As before, Dealer accepted an incomplete credit application and again required no physical identification card.

8

ELECTRONICALLY FILED - 2023 Mar 28 3:48 PM - BEAUFORT - COMMON PLEAS - CASE#2023CP0700583

64. As before, Dealer sold a "luxcare" package, GAP coverage, a $3,977 vehicle service contract, preferred maintenance, and other add-ons, to its benefit.

65. The price of the vehicle as delivered with add-ons came to $85,140.00.

66. Upon information and belief, falsely notarized documents were submitted to a financial institution by Dealer for at least the third time.

### Dealer Refuses Responsibility for $257,954 in Loans made in Landon's Name.

67. After the dust settled on the third and final transaction facilitated by Dealer unbeknownst to her, Landon had in just 26 days become indebted for nearly $260,000.00.

68. In or around early February of 2021, Plaintiff received notices of credit "denials" from creditors to whom Dealer had submitted fraudulent credit applications.

69. Concerned, Plaintiff checked her Navy Federal Credit Union account and found fraudulent transactions in her Navy Federal Credit Union account, which could only have been committed by Nottingham.

70. Plaintiff immediately reported the fraud to NFCU and went to the police.

71. Plaintiff resigned from the Eastern Westerner.

72. On February 9, 2021, Plaintiff notified Dealer she believed her identity had been stolen to buy the one of the Silverados.

73. Despite Dealer's duty under federal law to mitigate identity theft, close accounts, and notify law enforcement, it did none of those things.

74. From February 9 – February 16th, Plaintiff contacted Dealer nine more times but got no response, despite leaving messages for (among others) the dealership's General Manager.

75. Plaintiff also tried to advise Dealer of the suspected fraud through its web portal but got no substantive response.

76. Finally, on February 16, Plaintiff spoke personally with an employee of Dealer. Rather than taking Plaintiff's concerns seriously, the employee ridiculed her and asked her if she was going into "the witness protection program."

9

ELECTRONICALLY FILED - 2023 Mar 28 3:48 PM - BEAUFORT - COMMON PLEAS - CASE#2023CP0700583

77. That same day, Plaintiff learned from another Dealer employee that not one – but three – vehicles had been financed by Vaden in her name.

78. Ultimately, following Plaintiff's report to law enforcement, police officers visited Vaden and learned not only of the fact that no driver's license had been present, and that Dealer had (seemingly routinely) falsely notarized documents.

79. Defendant Dealer's employees continued to make jokes about the physical differences between Plaintiff and Nottingham in the presence of law enforcement.

80. Upon information and belief, as of February 10, 2022, despite Plaintiff's timely notice and filing a prior action by Plaintiff, Dealer has not returned all sums it made on the three fraudulent deals.

## DAMAGES

81. The wrongful acts of the Dealer caused Plaintiff to suffer significant damages, including the following concrete and particularized harms and losses:

    a. Harm to existing and/or prospective credit, including the inability to replace her prior vehicle (sold when she was given use of a "company truck");

    b. Harm to reputation;

    c. Becoming unjustly indebted for more than a **quarter-million dollars**, and creating financial harm that ultimately forced Plaintiff to file bankrutpcy;

    d. Emotional distress including humiliation, fear, worry, anxiety, and depression, and the physical manifestations of same;

    e. Loss of enjoyment of life's normal activities;

    f. Over 250 hours spent attempting to rectify the harm caused by Defendants, including filing suit against the credit reporting agencies and financial institutions to clear her credit;

    g. Loss of her fundamental right to privacy and/or the right to be left alone;

    h. Such other harms and losses as may be shown at trial.

10

ELECTRONICALLY FILED - 2023 Mar 28 3:48 PM - BEAUFORT - COMMON PLEAS - CASE#2023CP0700583

82. Defendant must pay all sums needed to compensate for all harms and losses proximately caused by the wrongful acts described, to return Plaintiff to the position enjoyed before wrongful injury.

83. For those harms and losses reasonably expected to continue into the future, Defendant must compensate for their expected continuing impact and effect,

84. Additionally, due to the intentional or reckless nature of the wrongful acts described, Defendant must pay nominal or symbolic damages, and punitive damages to punish said conduct, and deter its reoccurrence.

85. Defendant must further be required to pay attorney's fees and costs, and the penalties mandated by its violation of important statutory rights referenced below.

86. The harms and losses caused by Defendant are likely to be redressed by a favorable judicial decision, through an award of the above damages, assessment of fines and punitive damages, an award of attorney's fees and all litigation costs, and injunctive relief.

## FOR A FIRST CAUSE OF ACTION

### (Violation of S.C. Code §56-15-10, et. seq.)

87. The allegations contained hereinabove are repeated as if alleged verbatim, to the extent not inconsistent with the allegations of this cause of action.

88. The definition of "dealer" or "motor vehicle dealer" in §56-15-10(h) applies to Defendant.

89. Plaintiff is a member of the public.

90. The acts of Defendant, constitute unfair and deceptive acts or practices.

91. Defendant engaged in multiple actions in bad faith, were unconscionable or which caused damages to any party or to the public and committed such other violations of Title 56 as may be shown at trial, including using falsified documents and falsely notarized documents in transacting business with the State of South Carolina.

11

ELECTRONICALLY FILED - 2023 Mar 28 3:48 PM - BEAUFORT - COMMON PLEAS - CASE#2023CP0700583

92. As a direct and proximate result of the above wrongful acts, the Court should grant a temporary and permanent injunction requiring Defendant to immediately refrain from the above conduct and grant an award of double the actual damages Plaintiff sustained, the costs of this suit, and reasonable attorney's fees.

93. Further, the acts constitute knowing and malicious conduct, an award should be made against Defendant for punitive damages not to exceed three times the actual damages.

## FOR A SECOND CAUSE OF ACTION

### (Violation of SC Code §39-5-10, Unfair Trade Practices Act)

94. The allegations contained hereinabove are repeated as if fully alleged herein verbatim, to the extent not inconsistent with this cause of action.

95. The activities of Defendant described above constitute "trade or commerce" as defined by South Carolina Code Section 39-5-10, et.seq., (as amended).

96. The actions of the Defendant, above described, constitute unfair and deceptive acts and practices in the conduct of trade and commerce, as prohibited by the South Carolina Unfair Trade Practices Act, 39-5-10 et.seq., and are willful violations thereof.

97. The actions of the Defendant have a real and substantial potential for repetition and affect the public interest.

98. The Plaintiff suffered an ascertainable loss due to the unlawful actions of the Defendant, entitling Plaintiff to actual damages in an amount to be proven at trial, treble said actual damages, and an award of attorney's fees and costs.

## FOR A THIRD CAUSE OF ACTION

### (Invasion of Privacy)

99. The allegations contained hereinabove are repeated as if fully alleged verbatim, to the extent not inconsistent with this cause of action.

12

100. Plaintiff had a right and an expectation of privacy in her personal and credit information, and a right, as a private citizen who is not a public figure, to not have her likeness or personality appropriated for unconsented to commercial gain.

101. Defendant invaded the legitimate expectation of privacy of Plaintiff by (1) wrongful appropriation of personality; (2) wrongful intrusion into private affairs.

102. The conduct of Defendant was committed in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities.

103. The intrusion of Defendant was substantial and unreasonable.

104. The intrusion of Defendant was intentional.

105. As a direct and proximate result of the foregoing, damage has been inflicted on Plaintiff.

106. Plaintiff should be granted judgment against Defendant for actual damages and punitive damages as authorized by statute and attorney fees, and such other relief as is just and proper.

## FOR A FOURTH CAUSE OF ACTION
### (Civil Conspiracy)

107. The allegations contained hereinabove are repeated as if fully alleged verbatim, to the extent not inconsistent with the allegations of this cause of action.

108. Defendant entered into a plan, conspiracy, or scheme, and combined with the fraudster Nottingham to defraud financial institutions and commit identity theft, for financial gain, using fraudulent and unlawful means.

109. Defendant joined to injure the Plaintiff, as described above.

110. As a proximate consequence of the wrongful acts of the Defendant, injury was inflicted upon Plaintiff.

111. Upon information and belief, judgment should be granted to Plaintiff for compensatory and punitive damages that a jury deems reasonable, plus costs.

112. Because of the foregoing, judgment should be granted for actual damages as may proven at trial, besides special and general damages including extreme emotional distress,

13

ELECTRONICALLY FILED - 2023 Mar 28 3:48 PM - BEAUFORT - COMMON PLEAS - CASE#2023CP0700583

embarrassment, and humiliation. The recklessness and malicious conduct of Defendant further entitles Plaintiff to punitive damages in an amount to be determined by the trier of fact.

## **PRAYER FOR RELIEF**

WHEREFORE, the prayer of the Plaintiff judgment in an amount sufficient to compensate Plaintiff for actual damages, with punitive damages, statutory damages, such interest as is allowable by law, costs, attorney's fees, and such other relief as is just and proper.

DAVE MAXFIELD, ATTORNEY, LLC

s/ David A. Maxfield
_____
Dave Maxfield, Esq., SC Bar No. 7163
P.O. Box 11865
Columbia, SC 29211
(803) 509-6800
dave@consumerlawsc.com

March 28, 2023

14

ELECTRONICALLY FILED - 2023 Apr 13 3:49 PM - BEAUFORT - COMMON PLEAS - CASE#2023CP0700583

| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |
|---|---|
| COUNTY OF BEAUFORT | FOURTEENTH JUDICIAL CIRCUIT |

Rebecca A. Landon,

                                          Plaintiff(s),

-vs-

2023-CP-07-00583

Vaden of Beaufort, Inc. and Samantha Nottingham a/k/a Samantha Jordan a/k/a Samantha Matos,

                                          Defendant(s).

## PROOF OF SERVICE

I, the undersigned, an employee of Dave Maxfield, Attorney at Law, have served Paracorp Inc., as registered agent for Vaden of Beaufort, by U.S. Certified Mail, Restricted Delivery, Return Receipt Requested on the 10th day of April 2023, with a Summons and Complaint in the above-entitled action as shown by the attached receipt.

                                          Respectfully submitted by:

                                          s/Janel Ben, Paralegal
                                          janel@consumerlawsc.com
                                          Dave Maxfield, Attorney, LLC

April 13, 2023

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Paracorp Inc.
2 Office Park Court #103
Columbia, SC 29223

9590 9402 7455 2055 7803 98

2. Article Number (Transfer from service label)

7021 0950 0001 8662 7440

PS Form 3811, July 2020 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X Pam Johnson
☐ Agent
☐ Addressee

B. Received by (Printed Name)
Pam Johnson

C. Date of Delivery
4/10/23

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☑ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery
☑ Return Receipt

Domestic Return Receipt

ELECTRONICALLY FILED - 2023 April 15 3:49 PM